**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| Larry Patton, Jr., on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Trinity Operating (USG), LLC,<br><br>Defendant. | Case No.CIV-25-27-JAR |

**CLASS REPRESENTATIVE'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT & BRIEF IN SUPPORT**

Class Representative Larry Patton, Jr. ("Class Representative" or "Plaintiff"), moves the Court for final approval of the:

1. Proposed Class Action Settlement;
2. Notice of Settlement and Plan of Notice; and
3. Proposed Initial Plan of Allocation.

Class Representative's proposed Judgment is attached as **Exhibit 1**, and Declaration of Adam R. W. Farr, CPA with Initial Plan of Allocation is attached as Exhibit 2. [1] With two requests for exclusion received by JND and no objections received by or known to JND as of September 8, 2026 (Ex. 5, JND Decl. at 4, ¶¶ 15–17), Class Representative submits that the Settlement is fair, reasonable, and adequate and should be finally approved. **Ex. 3**, Declaration of Class Representative ("Class Rep. Decl.") at 3, ¶ 16.3.

## BACKGROUND

In the interest of brevity, Class Representative will not recite the entire background of this Litigation. Rather, Class Representative refers the Court to the Motion for Preliminary Approval

[1] The proposed judgment was attached as Exhibit 2 to the Settlement Agreement ("SA"), Doc. 35-1 at 8, ¶ 1.20. Class Counsel will also submit native versions of the proposed orders to the Court in advance of the Final Fairness Hearing and after the opt-out and objection (September 17, 2026) deadlines have passed.

(Doc. 35), the Declaration of Class Counsel ("Counsel Decl.") (Exhibit 4), the pleadings on file, and any other matters of which the Court may take judicial notice, all of which are incorporated as if fully set out in this memorandum.

On July 7, 2026, the Court issued an order preliminarily approving the Settlement, approving the Plan of Notice, and setting a date of October 8, 2026 at 10:00 a.m. for the Final Fairness Hearing. Doc. 41 at 8, ¶ 12 ("Preliminary Approval Order"). The Court also approved the Notices of Proposed Settlement of Class Action ("Class Notices"), for mailing and publication. Id. at 5–7, ¶¶ 7–8. The Court ordered that Notice be given to Class Members in accordance with the Plan of Notice as outlined in the Settlement Agreement and found that the Notices being provided "are the best notice practicable under the circumstances, constitute due and sufficient notice to all persons and entities entitled to receive such notice, and fully satisfy the requirements of applicable laws, including due process and Federal Rule of Civil Procedure 23." Id. at 5–7, ¶¶ 7–8. Since preliminary approval, Notice was mailed, by first-class mail, as ordered by the Court, to 13,361 potential members of the Settlement Class on August 6, 2026. Ex. 5, Declaration of Jennifer M. Keough on Behalf of Settlement Administrator, JND Legal Administration LLC, Regarding Notice Mailing and Administration of Settlement ("JND Decl.") at 2, ¶ 6 & Ex. A. Notice was also published on the settlement website and, on August 11, 2026, in The Oklahoman and The Tulsa World. Id. at 3, ¶¶ 9–10 & Exs. B–C.

The facts regarding certification haven't changed since the Court entered the Preliminary Approval Order—class certification remains proper. A general plan of allocation was described in the Notices, along with the other material terms of the Settlement Agreement. See Ex. 5, JND Decl. at Ex. C at 2–3; SA, Doc. 35-1. Consistent with the Notices and the Plan of Allocation, the Initial Plan of Allocation lists estimated distributions by Class Member owner number and identifies distributions of $5.00 or less as "de minimis," subject to Court approval. See Ex. 2, Farr Decl. at 4, ¶ 10, at 5–6, ¶ 12 & Farr Ex. 2. The Initial Plan of Allocation – prepared by Plaintiff's expert, Adam R. W. Farr, CPA of Ley, Gifford & Farr, PLLC – assumes the Court approves the requests for reimbursement of Litigation Expenses and Administration, Notice, and Distribution

Costs, and the requests for Plaintiff's Attorneys' Fees and a Case Contribution Award. See SA, Doc. 35-1 at 24, ¶ 6.3. Class Representative will move the Court for a Distribution Order based upon a Final Plan of Allocation after the Effective Date, with the benefit of the Court's rulings on those requests. See SA, Doc. 35-1 at 24, ¶ 6.4.

Following mailing of the Notices, Members of the Settlement Class will have until September 17, 2026 to request exclusion or file an objection. See Doc. 41 at 10–12, ¶¶ 14–15. As of September 8, 2026, JND had received two requests for exclusion and had not received and was not aware of any objections. See Ex. 5, JND Decl. at 4, ¶¶ 14–17 & Ex. D. The small number of opt-outs and objections, if any, to the Settlement support the conclusion that the Settlement and Plan of Allocation are fair, adequate, reasonable, and in the best interests of the Settlement Class such that final approval should be granted.

## ARGUMENT & AUTHORITY

The Court should grant final approval of the Settlement. The procedure for reviewing a proposed class action settlement is a well-established two-step process. First, the Court conducts a preliminary analysis to determine if the settlement should be preliminarily approved such that the class should be notified of the pendency of a proposed settlement. Manual for Complex Litigation § 21.632 (4th ed. 2004). Second, the class is notified and provided with an opportunity to be heard at a fairness hearing before the settlement is finally approved. Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.25, at 38 (4th ed. 2002). The Court already carried out this first step with its Preliminary Approval Order, and notice was effectuated pursuant to the terms of the Settlement Agreement and in the form and manner approved by the Court. See SA, Doc. 35-1 at 15–16, ¶ 3.4; Ex. 5, JND Decl. at 2–4, ¶¶ 5–12 & Exs. A–C. As to the final step, courts in the Tenth Circuit consider four factors when deciding whether to finally approve a class action settlement:

a. Whether the proposed settlement was fairly and honestly negotiated;
b. Whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
c. Whether the value of an immediate recovery outweighs the mere possibility of

future relief after protracted and expensive litigation; and

d. Whether, in the parties' judgment, the settlement is fair and reasonable.

*See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984); *see also* Fed. R. Civ. P. 23(e)(2). Each factor supports final approval of the Settlement here.

**1. The Court Properly Certified the Settlement Class for Settlement Purposes and Should Confirm this Finding by Finally Certifying the Settlement Class Under Rule 23**

Before addressing the four factors, the Court must find class certification remains appropriate for settlement purposes. The Court already certified the following Settlement Class:

> All non-excluded persons or entities who: (1) received late payments under the PRSA from Trinity (or Trinity's designee) for oil and gas proceeds from Oklahoma wells, or whose proceeds from Oklahoma wells were sent as unclaimed property to a government entity by Trinity; and (2) whose proceeds did not include the statutory interest required by the PRSA.
>
> Excluded from the Settlement Class are: (1) Trinity, its affiliates, predecessors, and employees, officers, and directors; (2) agencies, departments, or instrumentalities of the United States of America or the State of Oklahoma; (3) any Indian Tribe as defined at 30 U.S.C. section 1702(4) or Indian allottee as defined at 30 U.S.C. section 1702(2); (4) persons or entities that Plaintiff's Counsel may be prohibited from representing under Rule 1.7 of the Oklahoma Rules of Professional Conduct; (5) publicly traded oil and gas companies; and (6) FBC Royalty Partners LLC, Staab Holdings LLC, Alan R. Staab, Golden Gas Service Co., Donald M. Woodford, Maria Woodford Rev Trust, Sultan Oil Company, Ark Trust A Revocable Trust DTD 2/14/89, Carol W. Byrd Trust, Heritage Royalties Inc., Spindletop Exploration LLC, Mako Resources LLC, TMN Resources LLC, and Dan and Kelly McClure.

Doc. 41 at 2–3, ¶ 2. Class certification remains proper under Rule 23(a) and (b)(3) for settlement purposes for the reasons set forth in the Preliminary Approval Motion (see Doc. 35). And Defendant consents to certification of the Settlement Class for the purpose of settlement.

The prerequisites for class certification under Rule 23(a) and (b)(3) are satisfied. First, Rule 23(a)(1)'s numerosity requirement is satisfied because the Settlement Class consists of thousands of owners, whose joinder would be impracticable. Ex. 5, JND Decl. at 2, ¶¶ 4–6; see

also *Trevizo v. Adams*, 455 F.3d 1155, 1161–62 (10th Cir. 2006). Second, Rule 23(a)(2)'s commonality requirement is met because "many questions of law and fact exist that could be answered uniformly for the Settlement Class using common evidence." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016); see also *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018) ("A finding of commonality requires only a single question of law or fact common to the entire class" (internal citations omitted)). Each of these common issues stems from a common body of law – the statutory law of the State of Oklahoma. The real property interests at issue are property located in the State of Oklahoma, and the payments at issue are governed by Oklahoma substantive law. Thus, any choice of law analysis would result in the application of Oklahoma law to the legal claims and, as such, there are no other states' laws implicated by this action, nor any other choice of law issues that could affect the Court's commonality analysis here. See id. Third, Rule 23(a)(3)'s typicality requirement is satisfied because Defendant treated all owners the same for purposes of proceeds payments, the same legal theories and fact issues underlie each Class Member's claims, and all Class Members suffered the same type of injury arising out of the same facts that can be proven by the same, common evidence. *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198–99 (10th Cir. 2010).

Finally, Rule 23(a)(4)'s adequacy of representation requirement is satisfied because there are no conflicts—minor or otherwise—between Class Representative and the other Class Members. Ex. 3, Class Rep. Decl. at 5, ¶ 23; see *Tennille v. Western Union Co.*, 785 F.3d 422, 430 (10th Cir. 2015). Class Representative and Class Counsel have prosecuted the Litigation vigorously and Class Counsel is unquestionably qualified to represent the Class here. See Ex. 4, Counsel Decl. at 1–5, ¶¶ 1–24.

Additionally, Rule 23(b)(3)'s predominance and superiority requirements are satisfied here. *Tyson Foods*, 136 S. Ct. at 1045; *Menocal*, 882 F.3d 905, 914–15; *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1255 (10th Cir. 2014); *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014). The predominance requirement is met because the substantive claims are all common (Oklahoma law under Oklahoma choice-of-law principles) as are the

aggregation-enabling issues of fact (chiefly, Defendant's common course of late payments without statutory interest to Class Members). The common questions under the shared law predominate over and are more important than any potential individual issues that theoretically could arise in the Litigation. And the superiority requirement is satisfied because resolving the Litigation through the class-wide Settlement is far superior to any other method for fairly and efficiently adjudicating these claims.

The Court properly certified the Settlement Class and, because Class Representative has proven that each of the requirements for certification under Rule 23(a) and (b)(3) remain satisfied, this finding should be confirmed with the final certification of the Settlement Class under Rule 23.

**2. The Court Should Grant Final Approval of the Settlement**

The Court should finally approve the Settlement as fair and reasonable. The Court has broad discretion in deciding whether to grant approval of a class action settlement. *Jones*, 741 F.2d at 324. "As a general policy matter, federal courts favor settlement, especially in complex and large-scale disputes, so as to encourage compromise and conserve judicial and private resources." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."). As demonstrated below, each of the four factors identified by the Tenth Circuit weighs in favor of final approval.

**A. The Settlement is the product of extensive arm's-length negotiations between experienced counsel.**

The fact that the Settlement was fairly and honestly negotiated by qualified, experienced counsel supports final approval. *See Reed v. GM Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gain-said."). The fairness of the negotiation process is to be examined with reference to the experience of counsel, the vigor with which the case was prosecuted, and any coercion or collusion that may have affected

the negotiations.

Here, the Settlement is the product of extensive arm's-length negotiations between the Parties' experienced counsel. See Ex. 4, Counsel Decl. at 5, ¶ 23. The Parties participated in a private mediation with Brad Gungoll on February 26, 2026. See id. at 3, ¶ 13. Class Counsel has unique experience with oil-and-gas royalty underpayment and late-payment class actions. Randy C. Smith, PLLC regularly represents plaintiffs in oil-and-gas class actions and has obtained settlements in numerous underpayment or late-payment class actions in Oklahoma state and federal courts.[2] Class Counsel is experienced and qualified counsel and represented the Settlement Class honestly and fairly during the Litigation and settlement negotiations. See Ex. 4, Counsel Decl. at 1–5, ¶¶ 1–24.

Class Counsel's experience positioned him well to comprehensively examine the large amount of information and data produced in the Litigation, enabling the Parties to make informed decisions about the strengths and weaknesses of their respective cases. See, e.g., id. at 3–5, ¶¶ 7–24; *Childs v. Unified Life Ins. Co.*, No. 10-CV-23-PJC, 2011 WL 6016486, at *12 (N.D. Okla. Dec. 2, 2011). Further, Class Representative was involved in the negotiations and believes the settlement process resulted in an excellent recovery for the Settlement Class. See Ex. 3, Class Rep. Decl. at 2–3, ¶¶ 7–16. Class Representative expended time and resources prosecuting the Litigation, including communicating with Class Counsel, providing documents and information, and participating in the negotiations that led to the Settlement. Id. at 2–3, ¶¶ 7–13. The Parties and their lawyers were well prepared for the serious and intelligent negotiations that ultimately led to the Settlement.

These facts demonstrate the Settlement resulted from serious, informed, and non-

---

[2] See, e.g., *OGP, LLC v. Contango Resources, LLC*, No. 22-CV-382-JFH-JFJ (N.D. Okla. 2022); *Broadbent v. Presidio Petroleum, LLC*, No. CV-22-15 (D.C. Roger Mills County); *GOP, LLC v. Merit Energy Co., LLC*, No. CIV-22-278-RAW-JAR (E.D. Okla.); *Frederick M. Scott III, Trustee of the Scott Family Tr., and Wake Energy, LLC v. BCE-Mach II LLC*, No. CIV-23-264-R (W.D. Okla.) (removed from Dist. Ct. of Roger Mills Cnty., Okla., No. CV-2023-1); *Wake Energy, LLC v. Canvas Energy, LLC, formerly known as Chaparral Energy, L.L.C.*, No. CIV-25-249-JAR (E.D. Okla.); and *Wake Energy, LLC v. Mustang Fuel Corp. and Mustang Gas Prods., LLC*, No. 22-CV-364-GLJ (E.D. Okla.).

collusive negotiations between skilled and dedicated attorneys. The first factor supports final approval.

### B. Serious questions of law and fact exist, placing the ultimate outcome in doubt.

The existence of serious questions of law and fact places the ultimate outcome of this Litigation in doubt, and such doubt "tips the balance in favor of settlement because settlement creates a certainty of some recovery and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008) (internal citations omitted).

There are numerous factual and legal issues about which the Parties disagree—issues that would ultimately be decided by a court or a jury. Despite Class Representative's optimism regarding his chances at class certification and trial, the Parties vehemently disagree on numerous factual and legal issues, and Defendant denies wrongdoing giving rise to liability for late payment of oil-and-gas proceeds. Settlement renders the resolution of these issues unnecessary and provides a guaranteed recovery in the face of uncertainty. Because this Litigation presents serious issues of law and fact that place the ultimate outcome in doubt, the second factor supports final approval of the Settlement.

### C. The value of immediate recovery outweighs the mere possibility of future relief after long and expensive litigation.

The complexity, uncertainty, expense, and likely duration of further litigation and appeals also support approval of the proposed Settlement. The immediate value of the $16,500,000.00 cash recovery outweighs the uncertainty, additional expense, and likely delay of continued litigation. Class Members will receive the benefits of the Settlement without the need to submit claims or take further action. The guaranteed recovery achieved through the Settlement is superior to the mere possibility of relief after long, expensive, and uncertain litigation. Furthermore, the Settlement also provides Future Benefits to the Settlement Class, which are estimated to have a present value of at least $6,400,000.00, for a Gross Settlement Value of approximately $22,900,000.00. *See* SA, Doc. 35-1 at 14, ¶ 2.5; **Ex. 2**, Farr Decl. at 3, ¶¶ 7–8.

While Class Counsel is confident in his ability to prove the claims asserted, he also recognizes liability is far from certain and many potential obstacles to obtaining a final, favorable verdict exist. Even if Class Representative was able to establish liability, continued litigation would likely require substantial additional time and resources and could be followed by post-trial proceedings and appeals.

Class Counsel is intimately familiar with the risks of proceeding with the Litigation because he has extensive experience prosecuting oil-and-gas class actions. See Ex. 4, Counsel Decl. at 1–2, ¶¶ 1–2. Class Counsel believes the value of the immediate recovery under the Settlement outweighs the risks, delays, and expenses of continued litigation.

**D. The Parties agree the Settlement is fair and reasonable.**

The fact that Class Representative and Defendant believe the Settlement is fair and reasonable supports final approval. Class Counsel and Class Representative only agreed to settle the Litigation after considering the substantial benefits the Settlement provides to the Settlement Class, the risks of continued litigation, and the desirability of allowing the Settlement to be consummated as provided by the Settlement Agreement.

Class Counsel's judgment as to the fairness of the Settlement also supports final approval. "Counsels' judgment as to the fairness of the [settlement] agreement is entitled to considerable weight." *Childs*, 2011 WL 6016486, at *14 (citation omitted). Class Counsel believes the terms and conditions of the Settlement are fair, reasonable, and adequate to the Settlement Class, and the Settlement is in the Class Members' best interests. See Ex. 4, Counsel Decl. at 5, ¶ 22. This last factor fully supports the Court's final approval of the Settlement. Indeed, all four factors considered by courts in the Tenth Circuit support final approval of the Settlement.

**3. The Notice Method Used was the Best Practicable Under the Circumstances and Should be Approved**

The Court should approve the Notice given to the Settlement Class. Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Also, Rule 23(e)(1) instructs courts to "direct notice in a reasonable manner

to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). In terms of due process, a settlement notice need only be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Fager v. CenturyLink Comm'ns, LLC*, 854 F.3d 1167, 1171 (10th Cir. 2016) (citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)). "The Supreme Court has consistently endorsed notice by first-class mail," holding "a fully descriptive notice . . . sent first-class mail to each class member, with an explanation of the right to 'opt out,' satisfies due process." *Id.* at 1173. Here, the Notice campaign carried out by Class Counsel and the Settlement Administrator is substantially comparable to notice campaigns completed in other oil-and-gas class actions approved by district courts in Oklahoma, including this Court.

In its Preliminary Approval Order, the Court preliminarily approved the form and manner of the Notice disseminated by the Settlement Administrator, finding the Notices "are the best notice practicable under the circumstances, constitute due and sufficient notice to all persons and entities entitled to receive such notice, and fully satisfy the requirements of applicable laws, including due process and Federal Rule of Civil Procedure 23." Doc. 41 at 5–7, ¶¶ 7–8. The Court directed dissemination of the Notices in accordance with the Settlement Agreement and the Preliminary Approval Order. Id.

The Notice was mailed to 13,361 potential Class Members and further diligence was conducted to ascertain proper mailing addresses. Ex. 5, JND Decl. at 2–3, ¶¶ 5–8. In addition, the Court-approved Notice was published on August 11, 2026 in two newspapers of local circulation, The Oklahoman and The Tulsa World. Id. at 3, ¶ 9 & Ex. B. The Notice materially informed Class Members about the Litigation, the Settlement, and the facts needed to make informed decisions about their rights. Also, the Notice, along with other documents germane to the Settlement, were posted on the website created for and dedicated to this Litigation, www.patton-trinity.com, beginning on August 6, 2026. Id. at 3–4, ¶¶ 10–11 & Ex. C. This website is maintained by JND, where additional information regarding the Settlement can be found. Id.

In sum, the form, manner, and content of the Notice campaign were the best practicable

notice, and their contents were reasonably calculated to, and did, apprise Class Members of the pendency and nature of the Settlement and afford them an opportunity to opt out or object. Therefore, the Court should grant final approval of the Notice given to the Settlement Class here.

**4. The Initial Plan of Allocation Should Be Approved**

The Court should also approve the proposed Initial Plan of Allocation, which is attached as Farr Exhibit 2 to the Farr Declaration (Ex. 2). See Ex. 2, Farr Decl. at 4, ¶¶ 9–10, at 5–6, ¶ 12 & Farr Ex. 2. Like the Settlement itself, a plan of allocation must also be approved as fair and reasonable. See *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1262 (D. Kan. 2006) (citing *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 462). Where, as here, a plan of allocation is formulated by competent and experienced class counsel, the plan need only have a reasonable, rational basis. Id. As a general rule, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable. Id.; see also, e.g., Initial Plan of Allocation Order (Doc. 23), *Chieftain Royalty Company v. XTO Energy, Inc.*, No. 11-CV-00029-KEW (E.D. Okla. Mar. 27, 2018).

Class Counsel, together with Plaintiff's expert, have formulated the Initial Plan of Allocation by which Class Members will be reimbursed proportionately relative to the extent of their injuries for late payment of oil-and-gas proceeds. Importantly, this is not a claims-made settlement, nor is it a settlement where a Class Member must take further action to participate. Instead, every Class Member who did not effectively opt out of the Settlement will receive a check for his, her, or its allocation of the Net Settlement Fund, subject to any de minimis threshold approved by the Court. Farr Exhibit 2 identifies Class Members by unique owner number and lists their estimated distributions. Subject to Court approval, Class Members whose calculated distributions are $5.00 or less are marked "de minimis" and will not receive a distribution. The estimates remain subject to adjustment for the Court's final fee and expense awards, escrow interest, excluded parties, and opt-outs. See Ex. 2, Farr Decl. at 4, ¶¶ 9–10, at 5–6, ¶¶ 11–12 & n. 2; id. at 6, ¶ 13.

Specifically, the Net Settlement Fund will be allocated to individual Class Members

proportionately within the Settlement Class based on the amount of statutory interest owed on the original underlying payment that allegedly occurred outside the time periods required by the PRSA, with due regard for the production date, the date the underlying payment was made, the amount of the underlying payment, the time periods set forth in the PRSA, any additional statutory interest that Class Counsel believes has since accrued, and interest previously paid by Defendant, if any. Farr applied twelve percent statutory interest compounded annually to unpaid interest and calculated additional interest through February 28, 2026. See Ex. 2, Farr Decl. at 4, ¶ 10, and at 6, ¶ 13. Pursuant to the SA, the Initial Plan of Allocation further assumes a reduction for Plaintiff's Attorneys' Fees, Litigation Expenses, Administration, Notice, and Distribution Costs, and a potential Case Contribution Award, which amounts will ultimately be determined by the Court at the Final Fairness Hearing. See SA, Doc. 35-1 at 22–24, ¶¶ 6.2–6.3.

Class Representative and Class Counsel, with the aid of the Settlement Administrator, will allocate the Net Settlement Fund proportionately among all Class Members. A Distribution Check for each Class Member's allocation of the Net Settlement Fund will then be mailed to each respective Class Member's last known mailing address, using the payment history data produced. Returned or stale-dated Distribution Checks shall be reissued as necessary to effectuate delivery to the appropriate Class Members using commercially reasonable methods. See SA, Doc. 35-1 at 25–27, ¶¶ 6.6, 6.8–6.10.

Because the proposed Initial Plan of Allocation was formulated by competent and experienced Counsel and is based on the type and extent of each Class Member's particular loss, the Court should approve it as fair, reasonable, and adequate.

## CONCLUSION

Class Representative and Class Counsel respectfully request that the Court enter the proposed Judgment, attached as **Exhibit 1**. [3] The proposed Judgment grants: (1) final certification of the Settlement Class; (2) final approval of the Settlement as fair, reasonable, and adequate, and

[3] Exhibit 1 reserves space for the Court to rule on objections, if any, and determine the approved requests for exclusion.

in the best interests of the Settlement Class; and (3) final approval of the Notice to Class Members. Class Representative and Class Counsel also respectfully request that the Court approve the Initial Plan of Allocation, which is attached as Farr Exhibit 2 to Farr's Declaration (Exhibit 2), to govern the allocation and distribution of the Net Settlement Fund to Class Members.

Respectfully Submitted,

/s/Randy C. Smith
Randy C. Smith, OBA #21824
RANDY C. SMITH, PLLC
One Leadership Square
211 N. Robinson Ave., Ste. 1310
Oklahoma City, OK 73102
Telephone: (405) 641-8662
randy@rcsmithlaw.com

COUNSEL FOR CLASS REPRESENTATIVE
LARRY PATTON, JR.

CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2026, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to parties and attorneys who are filing users.

*<u>/s/Randy C. Smith</u>*